.quently reimbursed by the defendant. Another instance was the reimbursement to the plaintiff in the amount of $200 paid by it to one O'Neil for damages for personal injuries, which adjustment was advised and authorized by the defendant. Even in the case of Rosebrook, the defendant consulted the plaintiff as to the advisability of paying his wages and expenses, and expressed approval of the arrangement. Thus reinforced by the acts of the parties themselves, no straining is required to sustain the plaintiff's contention that the words "cost of accidents" were intended to cover such judgments as the one upon which this action was brought.

The point is urged by defendant's counsel that, if plaintiff's contention were right, it would also be legally entitled under the contract to 10 per cent. additional of the amount claimed, which would be in effect placing a premium on its own negligence. The answer to this is that plaintiff's failure to ask for all that it may be entitled to is no reason for refusing to give it what it is entitled to.

[2] It may be argued with some force, theoretically, and perhaps morally, that no person should be permitted to insure another against the consequences of his own wrong, whether the wrong be against the state or against an individual, since a tort is only next door to a crime, so to speak, and both are, therefore, too closely related to justify an individual in thus evading his responsibility for either. This line of reasoning may also have much legal force, if in the future new public interests created by state insurance shall change existing standards of public policy; but it is too well settled upon existing authority to be questioned that contracts insuring an individual against the consequences of his own wrong, in the shape of damages for personal injuries caused by his own negligence, are recognized as valid and enforceable. There is no difference in principle between the contract under consideration, whereby the defendant agreed to indemnify the plaintiff for damages caused by the plaintiff's negligence, and the ordinary policy of indemnity insurance for which a premium is paid by the insured. The defendant's contention, therefore, that the construction sought by the plaintiff would render the contract void as against public policy, is without the support of legal authority.

Judgment for the plaintiff for the sum of $21,414.83, with interest from November 20, 1911.

Judgment for plaintiff.

---

### MARION v. B. G. COON CONST. CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. MASTER AND SERVANT (§ 256*)—INJURY TO SERVANT—STATUTORY AND COMMON-LAW CAUSES OF ACTION.

The allegations of the complaint, in an action for injuries to an employé, that the employer negligently operated a derrick, because there was no pin fastening the boom to the derrick, and because there were not enough wraps of the cable around the drum to hold the cable from slipping, and because the cable was not properly fastened to the drum,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

showed a cause of action under the Labor Law (Consol. Laws 1909, c. 31) and under the common law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. § 256.*]

**2. MASTER AND SERVANT (§ 168*)—INJURY TO SERVANT—NEGLIGENCE OF EMPLOYER—COMMON-LAW LIABILITY.**

The act of an employer in hiring an incompetent employé is not within the Labor Law (Consol. Laws 1909, c. 31), but is the basis of a cause of action under the common law for injury to a coemployé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 334, 335, 337–340, 349; Dec. Dig. § 168.*]

**3. APPEAL AND ERROR (§ 1062*)—ERRONEOUS RULINGS—CURING BY OTHER RULINGS.**

An error of the court in nonsuiting an employé's cause of action under the common law, and thereby limiting his right to recover under the Labor Law (Consol. Laws 1909, c. 31), is cured by the court submitting to the jury the cause of action under the common law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

**4. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—TECHNICAL ERROR.**

Where the court, in an action for injuries to an employé, cured the error of nonsuiting the employé as to his cause of action under the common law, by submitting the cause of action under the common law, its failure to formally change the ruling is a technical error, and under Code Civ. Proc. § 1317, it must be disregarded on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

**5. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—EVIDENCE.**

Where an employé, suing for a personal injury, shows the employer's negligent failure to furnish safe machinery, and also shows a negligent failure to hire a competent fellow servant, and also shows that both contributed to the accident, and that he was free from contributory negligence, he establishes one cause of action, and where he proves either he is entitled to have both grounds submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

**6. EVIDENCE (§ 380*)—X-RAY PHOTOGRAPHS—IDENTIFICATION.**

The testimony of a physician that he was present when X-ray pictures were taken, saw them taken, and saw them developed, and that he looked at the plates immediately after they were developed, establishes the identity and correctness of the pictures.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1657; Dec. Dig. § 380.*]

**7. EVIDENCE (§ 157*)—BEST AND SECONDARY EVIDENCE—X-RAY PHOTOGRAPHS—EXPERT TESTIMONY.**

The rule that an ordinary photograph is the best evidence of what it contains will not be applied to X-ray pictures, and the opinion of experts as to what they contain is the best evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460–470; Dec. Dig. § 157.*]

**8. APPEAL AND ERROR (§ 206*)—QUESTIONS IN LOWER COURT—PHOTOGRAPHS—ADMISSIBILITY.**

Where experts testified as to what X-ray pictures contained, but the pictures, though in court, were not introduced in evidence, and there was no demand that they should be introduced, the defeated party could not complain on the ground that the pictures were not introduced.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1273, 1283–1289; Dec. Dig. § 206.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**9. MASTER AND SERVANT (§ 117*)—INJURY TO SERVANT—EMPLOYER'S LIABILITY ACT—APPLICABILITY.**

Labor Law (Consol. Laws 1909, c. 31) § 18, prohibiting the furnishing of unsafe scaffolding, hoists, stays, ladders, or other mechanical contrivances, does not apply to a derrick used by a bridge contractor in raising and lowering materials.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 208; Dec. Dig. § 117.*]

**10. APPEAL AND ERROR (§ 171*)—QUESTIONS REVIEWABLE—THEORY OF CASE IN LOWER COURT.**

An employé, suing for a personal injury, may not avail himself of a provision of the Labor Law (Consol. Laws 1909, c. 31), where the case was not tried or submitted to the jury on the assumption that it came within that provision.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063, 1066, 1067, 1161–1165; Dec. Dig. § 171.*]

Smith, P. J., dissenting.

Appeal from Trial Term, Tompkins County.

Action by Verne Marion against the B. G. Coon Construction Company. From a judgment for plaintiff, and from an order denying a motion for new trial made on the minutes, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Tompkins, Cobb & Cobb, of Ithaca, for appellant.

Willard M. Kent, of Ithaca, for respondent.

HOWARD, J. The defendant was a contractor, building a dam across Six Mile creek. On one side of the creek it had erected a derrick, used to raise and lower materials; on the other side it had stationed an engine, used to operate the derrick. When the boom, a timber 46 feet long, which is a part of the derrick, apparatus, was down horizontal, the cable which operated it was unwound, so that only three or four wraps remained around the drum. The cable was not fastened to the drum for the purpose of holding it, but only to keep it from whipping. Friction was depended upon to hold the cable. There is a hole through the foot of the boom, and a hole through the flanges of an iron foot block of the derrick, so that an iron pin can be placed through these holes, thus fastening the boom to the derrick. At the time of the accident the boom was being operated without being pinned to the foot block. It was the duty of the plaintiff, among other work on this occasion, to stand part way down in the ravine and give signals to the engineer, who operated the engine. The engineer was a young man 19 years old, of good intelligence, but a common laborer up to a few days before the accident, with no previous experience before the job in question in operating engines, and having received only indifferent instructions as to the operation of that particular engine. The plaintiff at first signaled the engineer to lower the boom. The engineer did so, lowering it to within a foot or so of position. Then the plaintiff signaled for the load line to be lowered; but the engineer, thinking that the boom should be lowered a little,

before the load line was lowered, attempted to do so by operating a foot brake. In attempting to do this, either because he released the brake too much, or for some other reason which the engineer does not very well explain, the boom got away from him, the cable all ran off the drum, and the boom fell upon the plaintiff and injured him.

The plaintiff alleged, and gave evidence tending to support, four separate specifications of negligence—four separate grounds of liability: (1) That there was no pin fastening the boom to the derrick; (2) that there were not enough wraps of the cable around the drum to hold the cable from slipping; (3) that the cable was not properly fastened to the drum; (4) the hiring of a youthful, unskillful, inexperienced, incompetent engineer.

[1, 2] The first three, being defects in the machinery, are allegations available under the statute, as well as under the common law; the fourth allegation does not come within the statute. All four of these allegations, however, state grounds for a cause of action under the common law.

[3, 4] At folio 732, the court, in response to defendant's motion to compel the plaintiff to elect in going to the jury between the common-law count and the Labor Law count, said:

"I will rule that this is a case under the statute, and is not one under the common law."

This ruling seems to have been equivalent to a nonsuit of the alleged cause of action under the common law. If so, it was erroneous; for, as we have seen, each of the four allegations of negligence was available to the plaintiff under the common law. If it was particularly directed against the allegation that the defendant was negligent because it had hired an incompetent engineer, the ruling was also erroneous; for the proof presented facts for the consideration of the jury under that common-law allegation. The court later on, however, ignored this ruling apparently, and in his charge submitted the case to the jury on the question of whether the defendant was negligent in hiring Davis, an alleged unskillful, inexperienced, incompetent man. If this court considers that the previous ruling may be thus cured— that is, cured in effect without a formal revocation—then the cure was in fact effected; for the charge proceeded as though the common-law count as to the engineer was yet intact. I think it should be held that the error was cured, for two reasons: First, because I doubt that the court intended his ruling to amount to a nonsuit; second, because, if he did, it having been subsequently rectified by his charge to the jury, we should treat his failure to formally change his ruling as a technical, rather than a substantial, omission, and ignore it under section 1317 of the Code.

[5] Under the statute the failure to furnish safe machinery is negligence; under the common law the failure to hire a competent engineer is negligence. If the plaintiff proves them both as contributing reasons for the accident, assuming, of course, his freedom from contributory negligence, that gives him a cause of action—one cause of action. Payne v. N. Y., S. & W. R. R. Co., 201 N. Y. 436, 95 N. E. 19. If he proves either, that would give him a cause of action; but

he was entitled to have both grounds submitted to the jury, for they might believe the one and reject the other. They might reject the contention of defective appliances, think it not proven, and adopt the assertion of negligence in hiring an incompetent engineer, think it well established by the evidence. Any ground of negligence which was presented to the court by the pleadings and the proof, whether under the common law or the statute law, should have been submitted to the jury. This point, therefore, the one most vigorously urged by the defendant, that the question of the negligence of the defendant, so far as it relates to the hiring of the engineer, should not have been submitted to the jury, is not well taken, and should be resolved in favor of the plaintiff.

It is strongly urged that the negligence of Davis, a fellow servant, in operating the engine, was the proximate cause, and indeed the only cause, of this accident. If his negligence was the cause, then the plaintiff cannot recover; but whether the accident was caused by a defect in the machinery of the defendant (the alleged short·cable, insufficient number of wraps, failure to pin fast the boom), or by the negligence of Davis, was an issue of fact for the jury to determine. The evidence is sufficient to support their verdict on this question, and there is no occasion to interfere with it.

[6-8] Another point urged by the appellant—the one concerning the X-ray pictures—and which seemed to attract considerable attention from the court at the time of the argument, will upon examination, I believe, be found to be without merit. A careful reading of all the medical evidence, and the other evidence as to injuries, will show that the plaintiff was substantially injured. One of the plaintiff's witnesses, Dr. Gardner, swears:

"I was present when the [X-ray] pictures were taken, saw them taken, saw them developed, and looked at the plates immediately after they were developed."

Thus their identity and correctness were established. Then the doctor proceeds to tell what the pictures show. Another physician, Dr. Tinker, also tells what he thinks the plates show. There was no demand made by the defendant for the production of the plates; no hint or suggestion that they were desired. They were in fact in court, so the plaintiff states in his brief. I can see no error at all in this X-ray incident. The evidence shows that nobody but an X-ray expert could tell anything from the plates, and that if they had been produced they would have done the court, jury, or the defendant's ordinary physicians no good. I do not think that the doctrine that an ordinary photograph is the best evidence of what it contains should be applied to X-ray pictures. They constitute an exception to the rule concerning ordinary documents and photographs, for the X-ray pictures are not, in fact, the best evidence to laymen of what they contain. Generally they are no evidence at all, signifying nothing whatever, except to the expert. The opinion of the expert is the best evidence of what they contain—the only evidence. If there had been a demand for these pictures in court, or a request that they be submitted to the inspection of the opposing experts, and these rights had

.been denied the defendant, such an error would be serious. But whatever harm befell the defendant, if there was any harm at all, came to it by reason of its own failure to demand what it was entitled to, and what it would unquestionably have received by the mere asking. To sustain this contention of the defendant would be to tolerate worse than a technicality—a trick.

[9, 10] The plaintiff should not be permitted to avail himself of section 18 of the Labor Law (Consol. Laws 1909, c. 31), or recover upon that theory, first, because the law is not applicable to the facts proven, and also because the case was not tried or submitted to the jury upon the assumption that it came within the provisions of that section. Hammond v. Union Bag & Paper Co., 136 App. Div. 100, 120 N. Y. Supp. 652; Mulligan v. McDonald, 135 App. Div. 536, 120 N. Y. Supp. 522.

The judgment and order should be affirmed, with costs. All concur, LYON, J., in result, except SMITH, P. J., who dissents.