CLYDE H. NEILL *v.* FIDELITY MUTUAL LIFE INSURANCE
COMPANY

(No. 8649)

Submitted February 15, 1938.  Decided March 8, 1938.

HATCHER, JUDGE, dissenting.

*Trevey Nutter* and *H. H. Rose,* for plaintiff in error.
*Frank C. Haymond,* for defendant in error.

RILEY, JUDGE:

Clyde H. Neill instituted this action in assumpsit against the defendant, Fidelity Mutual Life Insurance Company, in the circuit court of Marion County. The recovery sought by the first count of the amended declaration, on which the case was tried, was limited to double indemnity under an accident clause of a life insurance policy. The defendant filed its plea of general issue to which the plaintiff replied generally and issue was joined thereon. From a judgment in favor of the plaintiff, based on a verdict of the jury, defendant prosecutes this writ of error.

Two specifications of defense were filed by defendant, only one of which, that is, "Specifications of Defense Number 1", was retained. Said "Specifications of Defense Number 1" was directed to the claim of the plaintiff set forth in the first count of the amended declaration. It denied liability on the ground that the plaintiff, although rendered wholly and presumably permanently disabled on January 15, 1932, as a result of an accident, had neglected and failed to file a proof of such accidental disability at the head office of the defendant company until April 22, 1932, more than sixty days after the date the claimed disability occurred. The plaintiff replied: (1) that the general agent of the defendant, located at Fairmont, having had actual notice of plaintiff's disability, had, by his representations to the representative of the plaintiff, waived proof of claim; (2) that for more than sixty days from the date of the accident the plaintiff was physically and mentally disabled from preparing or causing to be prepared the proof of claim required by the policy; and (3) that by the payment of liability under the policy for disability the defendant waived the requirement of notice for claim for double indemnity as a result of an accident.

The evidence, adduced at the trial (March term, 1937), discloses that plaintiff received serious personal injuries in an automobile accident on January 15, 1932. He was rendered unconscious and confined to a hospital for about ten days. Thereafter he was confined to his home in Fairmont for more than four months. It is clear that for more than sixty days following the accident he was not physically or mentally able to transact business. His injuries consisted of an injured right leg, crushed knee cap, severe back injury, broken right wrist, broken ribs, and cuts and bruises about his face, body and chest. He developed pneumonia, pleurisy and phlebitis. At times he was delirious and irrational, and at other times suffered pain necessitating the use of opiates. A few weeks after the accident, he had chronic and ulcerated phlebitis. As a result of his injuries he had to undergo several surgical operations. He walks with a cane and limps. Three physicians and the plaintiff testified that in their opinion, he was permanently and totally disabled from engaging in any gainful occupation. To résumé the evidence as to plaintiff's disability, it is sufficient for us to say, as a matter of law, that plaintiff was disabled from filing the proof of his claim within the sixty days provided by the policy, and the jury to find, as a matter of fact, that he was permanently and presumably totally disabled within the accident provision of the policy. "Absolute helplessness is not deemed by the courts to be a condition precedent to the right of an insured to recover under a total and permanent disability clause." *Hayes* v. *Prudential Ins. Co.*, 114 W. Va. 323, 326, 171 S. E. 824, 825. Ordinarily, the question is one for the jury. *Jones* v. *Connecticut General Life Ins. Co.*, Syl. 3, 114 W. Va. 651, 173 S. E. 259.

Plaintiff's counsel says that because of his physical and mental condition for a period of more than sixty days after the date of the accident, plaintiff was not required to file a proof of claim during the course of his disability. In opposition to this view, reliance is had upon the cases of *Iannarelli* v. *Ins. Co.*, 114 W. Va. 88, 171 S. E. 748; *DaCorte* v. *Ins. Co.*, 114 W. Va. 172, 171

S. E. 248; *Bergholm* v. *Peoria Life Ins. Co.*, 284 U. S. 489, 76 L. Ed. 416, 52 Sup. Ct. 230, and a number of others. The *Iannarelli, DaCorte* and *Bergholm* cases represent the general rule in the United States. In those cases the disability of the assured to file a proof of claim within the period provided for in the policy was relied on *to effect a waiver of premiums,* the non-payment of which caused the policies to lapse. The incapacity of an insured to file a proof of claim, due to the injury provided against in a policy, will not prevent a forfeiture or termination of the policy because of non-payment of premiums. For a general collation of authoriites, see 15 A. L. R. 318; 59 A. L. R. 1080. The instant case, however, does not come within this general rule. Here, the policy had not lapsed and no reliance was had upon the disability of the plaintiff to file proof of claim in order to bring about a waiver in the lapse of the policy. Whereas, in the *Iannarelli* and *DaCorte* cases, the policies had lapsed because of non-payment of premiums, and there was, in law and in fact, no contract of insurance. What was originally a contract of insurance became a *nudum pactum.* Under the clear weight of authority in this country, where a policy is in full force and effect and the assured relies upon his physical and mental disability as a waiver of a proof of claim, the courts sustain such waiver. *Pfeiffer* v. *Missouri State L. Ins. Co.*, 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600; *Rhyne* v. *Jefferson Standard Life Ins. Co.*, 196 N. C. 717, 147 S. E. 6; *Levan* v. *Metropolitan Life Ins. Co.*, 138 S. C. 253, 136 S. E. 304. See generally, 14 R. C. L., Insurance, sec. 504, p. 1333, and permanent supplement; 33 C. J., Insurance, sec. 663, p. 15; and extensive note in 54 A. L. R. 611. Contra: *Whiteside* v. *North American Accident Ins. Co.*, 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696.

The *Iannarelli* and *DaCorte* cases may be distinguished in still another way, as suggested by Judge Maxwell in the *Iannarelli* case. The instant case involves an accident insurance contract. Clearly, in the total disability clause of a life insurance policy, the filing of a proof of claim is a condition precedent. Equally is it clear that

an accident policy contemplates a disability which has already occurred and which, in many cases, would prevent the assured from filing a proof of claim within any limited time. See *Rhyne* v. *Jefferson Standard Life Ins. Co.*, *supra; Levan* v. *Metropolitan Life Ins. Co.*, *supra;* and *New England Mut. Life Ins. Co.* v. *Reynolds*, 217 Ala. 307, 116 So. 151, 153, 59 A. L. R. 1075, cited in the *Iannarelli* case. The question arising from the distinction between the two classes of cases is of first impression in this state. Here, the policy provides against a contingency which, in all probability, would render the insured, as it actually did in the instant case, unable to file a proof of claim until at least sometime after his injuries. Under the circumstances, we think the requirement of the filing of the proof of claim within sixty days, unlike the provisions in the *Iannarelli* and *DaCorte* cases, is a condition subsequent. Therefore, the failure to file the proof of claim within the stipulated time, the premiums on the policy not being in arrears, does not vitiate the accident clause of the policy, and the insured's rights were saved by the filing of a proof within a reasonable time after regaining his faculties. In this regard, we adopt the reasoning of the Alabama Court in *New England Mut. Life Ins. Co.* v. *Reynolds, supra,* cited with approval by Judge Maxwell in the *Iannarelli* case.

Because we are of the opinion that the plaintiff was excused from filing proof of claim within the sixty-day period, the assignments of error based on the instructions, and the introduction of evidence as to the powers of the local agent of the insurance company, as well as the refusal of the trial court to introduce the contract of agency between the insurance company and the local agent, become moot and have no place herein.

Error is assigned on the ground that the plaintiff, though skilled in the art of reading X-ray pictures, was permitted, without the introduction of the pictures or their presence in court, to testify as to what the X-ray photographs which disclosed the injury showed. This objection is predicated upon a sound rule of law, well-established by a majority of the courts. Generally, it

has been held that an X-ray picture is the best evidence, and therefore testimony of an expert, based on his knowledge of pictures not introduced in evidence, is inadmissible under the so-called best evidence rule. *Hammond* v. *Bloomington Canning Co.*, 190 Ill. App. 511; *Marion* v. *Coon Const. Co.*, 157 App. Div. 95, 141 N. Y. S. 647; Id. 216 N. Y. 178, 110 N. E. 444; 2 Jones' Commentaries on Evidence (2d Ed.), sec. 755, note 13; *Patrick & Tillman et al.* v. *Matkin*, 154 Okla. 232, 7 Pac. (2d) 414. But the introduction of improper evidence over objection, to be reversible error, must be prejudicial. 3 Am. Juris., subject, Appeal and Error, sec. 1027, note 12; *Merrill* v. *Marietta Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112, L. R. A. 1917F, 1043.

With this in mind, let us analyze the record to see whether the plaintiff's testimony, based on the X-ray photographs, was prejudicial to the defendant. The plaintiff testified to the effect that he was able to read X-ray pictures. The only part of his testimony which would indicate that he was basing his opinion on the X-ray pictures not introduced, was in reference to an operation, claimed to have been necessary by reason of his injury. He was asked: "Q. Was that (the operation) a direct result of this injury you speak of? A. Yes, sir, and in my back I had several X-ray pictures taken showing I had considerable curvature of the spine, which causes considerable pain." Here, the witness was testifying not merely what the X-ray pictures showed but, to a large extent, his testimony in this single sentence of his answer was based upon something which he felt in his own body, concerning which he, of all other persons, expert or not, was in the best situation to testify. While we adhere to the general rule as to the introduction of expert testimony, based on X-ray pictures not introduced in evidence, we are persuaded to the position that this testimony of the plaintiff was without prejudice, and, therefore, its introduction is not reversible error. By this holding we do not indicate that the relaxation of the general rule should be extended beyond the facts of the instant case.

For the reasons set forth, and after a careful review of the record, we think the trial court did not err in refusing to set aside the verdict of the jury, and therefore, the judgment should be affirmed.

*Affirmed.*

HATCHER, JUDGE, dissenting:

I am unable to distinguish the *Iannarelli* case from this. The plain condition in the Iannarelli policy was that if the insured became totally and permanently disabled by reason of bodily injuries or disease, and furnished the insurer due proof thereof at its home office, before defaulting a premium, the insurer would waive payment of subsequent premiums while the disability lasted. The plain condition in the present case is that if the insured became totally and permanently disabled as a result of bodily injuries, and furnished the insurer due proof thereof at its "head office" within sixty days from the date of the accident, the insurer would pay double indemnity. In each policy, alike, the happening of the disability rendered the insurer potentially liable on its covenant, but due proof of the disability at the home office of the insurer was requisite to convert that potentially into actual or "accrued" liability (the Alabama case to the contrary, notwithstanding). I submit with deference that the majority opinion underestimates the *Iannarelli* case in considering it only from the standpoint of a lapsed policy. True, the policy had lapsed when the suit was brought, but not when the disability commenced. The premiums then were not in default. The policy then was in force. The potential right then to the conditional benefit promised was as firmly established in that case as it was in the present case when plaintiff's disability occurred. Both cases equally relate to failure to furnish proof within the several periods prescribed by the policies. Moreover, what effect on the construction of plain words can the lapsing of a policy have? Do they not mean the same after as before the policy expires?

I see not why the majority opinion classifies one condition precedent, the other subsequent. In both cases the disability had to occur and proof be furnished the insurer *precedent* to its actual liability. But even if the majority classification be proper, shall plain words have one meaning when relating to a condition precedent and the same or similar words have a different meaning when relating to a condition subsequent? The *Iannarelli* opinion, specifically indifferent to whatever weights-of-authority there be, heeded only "the plain language of the policy." Why turn now, as the majority opinion has done, to a weight-of-authority for construction of equally plain language? The theory uniting the particular weight-of-authority now deferred to is that a policy requirement of certain proof within a specified time could not have been intended by the parties to apply, if the insured became incapable of furnishing the proof. See Cooley's Briefs on Ins. (2d Ed.), p. 5918. This very theory was urged in the *Iannarelli* case, and was there rejected by the court as illogical, because the parties had plainly contracted otherwise. I can see no more logic in the theory now, than then.