MATTHEW L. MARONEY *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(No. 9085)

Submitted May 8, 1940. Decided May 28, 1940.

328

*Ritchie, Hill & Thomas,* for plaintiff in error.

*Mahan, Bacon & White* and *S. C. Higgins, Jr.,* for defendant in error.

Fox, Judge:

The Prudential Insurance Company of America prosecutes this writ of error to a judgment of the Circuit Court of Fayette County, based on a jury verdict, recovered by Matthew L. Maroney on a policy of insurance which contained a provision for the payment of benefits on account of total and permanent disability occurring before the insured reached the age of sixty years. The parties will be referred to as they stood in the court below.

The policy provision with respect to payment of disability benefits reads as follows:

> "If the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder

of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any non-for-feiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:"

There is no dispute as to the facts. The plaintiff became sixty years of age on either June 20 or 28, 1938. For many years he had been yardmaster for the Chesapeake & Ohio Railway Company at Thurmond, West Virginia. On May 14, 1938, he went to a hospital at Beckley and was there examined by Doctors Smith and Wriston, who then found that he was suffering from a serious heart condition, defined as an arteriosclerotic heart disease or a degeneration of the muscles of the heart, and he was advised to remain in the hospital for a rest. The evidence is that this condition was of a permanent nature, and that mental or physical exertion aggravated the same. It is clear that he was at that time totally and permanently disabled within the provisions of the policy. He did not accept the advice of his physicians, but returned to work. It appears that shortly thereafter he complained to his superior, as to his physical condition, and indicated his fear that he might have to give up his work, but was requested to remain with the suggestion that his assistants might help him out in some of his work. From that time he did refrain to some extent from physicial work, but the fact remains that he continued in charge of the yards, and received his usual compensation until October 5, 1938, when he suffered a collapse and has not worked since. During the period from May until October, he was off from work four days in addition to two regular rest days each month. He returned to the hospital and remained for about two weeks, and afterwards was removed to his home. His condition has not improved as evidenced by the fact that he was unable to attend the trial of his case, and his evidence was introduced in the form of a deposition. He filed his claim for disability

benefits about the middle of November, 1938, some four and one-half months after he became sixty years old, and approximately six months after his heart condition was first disclosed to him by his physicians.

Defendant contends that plaintiff is barred from recovery on two grounds: (1) that he was not totally and permanently disabled, within the terms of the policy in question prior to the time he reached the age of sixty years; and (2) that his application for benefits was not made prior to his reaching the age of sixty years.

The one vital fact which stands out in this case is that on May 14, 1938, when the plaintiff was first examined, he had a heart condition which rendered him totally and permanently disabled within the meaning of the policy, and to the extent that he was thereafter continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his life. In making this broad statement, we mean to say that the disability was such that he could not continue in the line of work for which he was fitted and could not, without risking his life, engage in any character of work requiring substantial mental·or physical exertion. Notwithstanding this condition and the warning of his physicians, he continued to work, with some restraint on his physical activities, for some four and one-half months, and until he had passed the age of sixty years, and the question is whether or not this prevents him from now having advantage of the terms of the policy, to which, clearly, he was intitled before reaching that age.

This question is not without its difficulties, and, as we see it, cannot be resolved by adopting any fixed or general rule. Insurance companies are entitled to have enforced, as reasonable, policy provisions of the type now before us, in order that those who would malinger or otherwise assert fraudulent claims, may not be permitted to impose on them. Then, too, they are entitled to have applications for disability filed within a reasonable time, to the end that investigations may be made before the

lapse of time renders them less apt to reach the truth. *Jenkins, Admx.* v. *Insurance Company,* 122 W. Va. 73, 7 S. E. (2d) 343. On the other hand, it will not do to say that merely because a person, seized with a permanent illness, fails to realize his condition and continues to work, his commendable courage and hope are to deny him the enforcement of rights which he could, without question, have asserted, had he shown less spirit in combating his illness.

These considerations create the difficulty mentioned. Under the evidence, the plaintiff was clearly entitled to a total and permanent disability rating on May 14, 1938, had he applied for it before he became sixty years of age. His condition was such as to remove all doubt as to his good faith when afterwards he did apply. Nothing intervened, in the way of lack of evidence as to his physical condition when he was examined in May, or otherwise, which in any way prejudiced the defendant; in fact, the delay operated to its financial advantage. We can only deny recovery to the plaintiff on a strict and rigid interpretation of that portion of the policy which provides that disability shall be "to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime", and say that this means that one cannot do any work of a substantial character whatever his actual physicial condition may be. We are not disposed to go that far. The cases holding to such a strict rule are, we think, generally confined to situations where there is doubt as to the actual physical condition of the individual involved, but there are some cases which, contrary to our holdings, make the doing of work, in the continuation of an employment and receiving the usual compensation therefor, a bar to recovery. In cases where doubt exists, it would be correct to hold that total and permanent disability must be clearly established, and the ability of the claimant to continue to work should have a marked bearing upon the solution of

that question.. We have held that in cases of this character each case must be considered on its own facts, and that total and permanent disability does not mean complete physical or mental incapacity or a state of absolute helplessness. *Hayes* v. *Insurance Company,* 114 W. Va. 323, 171 S. E. 824; *Cody* v. *Insurance Company,* 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354. We now hold that where total and permanent disability is clearly established, as in this case, the mere fact that, against the advice of his physician and at a risk to his health and life, the claimant continues for a time to report for work and perform some of his usual duties, does not prevent him from asserting, within a reasonable time, the rights to which he was entitled when his condition was first ascertained and revealed to him. The following cases support this theory: *Metropolitan Life Ins. Co.* v. *Heavener,* (Ind.) 24 N. E. (2d) 813; *Young* v. *Metropolitan Life Ins. Co.,* 229 Mo. App. 823, 84 S. W. (2d) 1065. Of course, this holding must have its limitations. No definite time limit can be set. Circumstances must govern the application of the rule. Clearly, when one in failing health continues to work for a long period of time after reaching the age limit in which his policy protects him, and the circumstances are such as to make it difficult to definitely show his condition at the end of such age limit, or there are other circumstances which would render it unjust to allow him to file his claim, he should not be permitted to do so. In *Mertens* v. *Insurance Co.,* 216 N. C. 741, 6 S. E. (2d) 496, it was held that where the plaintiff had worked practically three years subsequent to reaching the age limit, though enfeebled by physical infirmity and lessening eyesight, he could not recover. In this case, however, we think the jury was warranted in finding that a sufficient time had not elapsed; and the circumstances under which the time was allowed to elapse do not justify a denial of the plaintiff's claim.

The failure of the plaintiff to file his application before reaching the age of sixty years is asserted as a bar to his claim. As we have indicated above, we think the claim

may be filed within a reasonable time, and we hold that the delay in this case from the latter part of June until the middle of November was not, under the circumstances, unreasonable. Any other holding would, in our judgment, serve to deny persons stricken with illness deemed unimportant at the beginning but which is in fact permanent and total disability, the right to recover therefor. We are unwilling to support a doctrine which might have such a result.

The judgment of the Circuit Court of Fayette County is therefore affirmed.

*Affirmed.*